OPINION
Defendant-appellant, Naron F. Morrison, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of two counts of attempted murder and two counts of felonious assault, with a firearm specification attached to each count.
According to the state's evidence, at approximately 10:00 p.m. on January 12, 1999, defendant arrived at the home of his half-sister, Juliet Morrison. In addition to Morrison, Morrison's former boyfriend, Franklin McNichol, and McNichol's then two-year-old daughter lived in the home at the time. Defendant joined Morrison, McNichol, and McNichol's daughter as they watched videocassettes. At one point, Morrison went with McNichol's daughter upstairs.
Shortly after going upstairs, Morrison heard noises downstairs, and approximately three shots. After instructing McNichol's daughter to remain upstairs, Morrison ran downstairs. As Morrison arrived at the foot of the stairs, defendant shot Morrison in the left side of her chest. At the time of the shooting, Morrison was about an arm's length away from defendant. Morrison entreated defendant not to kill her because she was pregnant. Defendant then put the gun to Morrison's head, and pulled the trigger three times. The gun, however, did not discharge because it had jammed. Failing in his attempt to dislodge the jam, defendant struck Morrison on the side of her head with the jammed weapon. Morrison then shoved defendant, opened the door, and ran outside as she screamed for help.
Defendant pursued Morrison, but defendant stopped his pursuit after neighbors began gathering outside. Morrison then returned to the apartment and found McNichol bleeding from his mouth and covered in blood. McNichol informed Morrison that defendant had shot him. Morrison called 9-1-1; McNichol went outside in front of the residence and asked neighbors for assistance. When police and emergency medical personnel arrived at the scene, they transported Morrison and McNichol to a hospital for treatment.
Police discovered a blood trail that led to two vehicles parked nearby. Based on the blood trail, police surmised that a person had exited the apartment, walked to the vehicles, and appeared to return to the residence. Although police did not recover a weapon from the residence, they recovered three spent .22 caliber casings and one live .22 caliber round.
Following the shooting, police filed arrest warrants for defendant. Several weeks later, Buffalo, New York police contacted Columbus police and informed them defendant had been arrested in Buffalo. At the time of his arrest, defendant had a pawn shop business card and receipt in his possession. The pawn shop receipt, dated January 12, 1999, was for a Jennings .22 caliber pistol.
After advising defendant of his constitutional rights, police interviewed defendant who alleged McNichol had threatened him on several past occasions, and on the night of the shooting, after Morrison and McNichol's daughter went upstairs, McNichol threatened him. According to the police officer that interviewed defendant, defendant stated McNichol did not have a weapon. During the interview, defendant admitted to shooting McNichol. The interview was concluded shortly thereafter at defendant's request.
By indictment filed March 4, 1999, defendant was charged with two counts of attempted murder and two counts of felonious assault, with a firearm specification attached to each count in the indictment. A jury trial was held, and the jury rendered a guilty verdict on all counts. For purposes of sentencing, the felonious assault charges were merged with the attempted murder charges. The trial court sentenced defendant to ten years on one attempted murder charge, and ten years on the other, with the sentences to be served consecutively. The trial court sentenced defendant to an additional three years for use of a firearm. Defendant timely appeals, assigning the following errors:
ASSIGNMENT OF ERROR NUMBER ONE:
 THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO INSTRUCT THE JURY ON THE OFFENSES OF ATTEMPTED VOLUNTARY MANSLAUGHTER AND AGGRAVATED ASSAULT AND THE DEFENDANT WAS ALSO DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY FAILED TO REQUEST SUCH INSTRUCTIONS.
ASSIGNMENT OF ERROR NUMBER TWO:
 THE TRIAL COURT ERRED WHEN IT REFUSED TO ALLOW DEFENSE COUNSEL TO QUESTION THE STATE'S WITNESS ABOUT PREVIOUS THREATS MADE BY THE VICTIM AGAINST THE DEFENDANT IN VIOLATION OF FUNDAMENTAL CONSTITUTIONAL RIGHTS.
ASSIGNMENT OF ERROR NUMBER THREE:
 THE TRIAL COURT ERRED WHEN IT FAILED TO IMPOSE THE SHORTEST PRISON TERM AUTHORIZED FOR THE OFFENSE WHEN THE DEFENDANT HAD NOT PREVIOUSLY SERVED A PRISON TERM AND THE COURT FAILED TO PLACE ON THE RECORD FINDINGS WHICH WOULD HAVE ALLOWED FOR THE IMPOSITION OF A LONGER SENTENCE. THE COURT FURTHER ERRED WHEN IT IMPOSED THE MAXIMUM SENTENCE ALLOWED BY LAW WHEN IT FAILED TO STATE ITS REASONS IN SUPPORT OF ITS JUDGMENT TO IMPOSE THE MAXIMUM SENTENCE. THE COURT ALSO ERRED BY IMPROPERLY IMPOSING CONSECUTIVE SENTENCES.
In his first assignment of error, defendant contends (1) the trial court committed plain error by failing to instruct the jury concerning the offenses of attempted voluntary manslaughter and aggravated assault, and (2) defendant was deprived of effective assistance of counsel when his attorney failed to request instructions concerning attempted voluntary manslaughter and aggravated assault.
As a preliminary matter, defendant failed to object to the jury instructions that did not include instructions about attempted voluntary manslaughter and aggravated assault. Absent plain error, the failure to object to improprieties in jury instructions is waiver of the issue on appeal. State v. Underwood (1983), 3 Ohio St.3d 12, 13. To prove plain error, defendant must demonstrate that, but for the error, the trial's outcome would have been otherwise. State v. Long (1978), 53 Ohio St.2d 91,97. Additionally, "[n]otice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id., paragraph three of the syllabus.
Defendant concedes that because he was not in immediate or imminent threat of harm when he shot McNichol, the trial court's determination that he did not act in self-defense was "probably correct." Nevertheless, defendant contends that because McNichol provoked him, the trial court should have instructed the jury on the offenses of attempted voluntary manslaughter and aggravated assault, which are offenses of an inferior degree than attempted murder and felonious assault.
Under R.C. 2903.03(A), if a person "* * * while under the influence of sudden passion or in a sudden fit or rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force * * * " knowingly causes the death of another, the person is guilty of voluntary manslaughter. Similarly, former R.C. 2903.12, in effect at the time defendant committed the crimes, provided that a person is guilty of aggravated assault as follows:
 (A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:
(1) Cause serious physical harm to another * * *
 (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance * * * .
In State v. Deem (1988), 40 Ohio St.3d 205, paragraph five of the syllabus, the Ohio Supreme Court determined that "[p]rovocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time."
In State v. Shane (1992), 63 Ohio St.3d 630, 634, the Ohio Supreme Court clarified Deem and determined that "[a]n inquiry into the mitigating circumstances of provocation must be broken down into both objective and subjective components. In determining whether the provocation is reasonably sufficient to bring on sudden passion or a sudden fit of rage, an objective standard must be applied. Then, if that standard is met, the inquiry shifts to the subjective component of whether this actor, in this particular case, actually was under the influence of sudden passion or in a sudden fit of rage. * * * If insufficient evidence of provocation is presented, so that no reasonable jury would decide that an actor was reasonably provoked by the victim, the trial judge must, as a matter of law, refuse to give a voluntary manslaughter instruction." See, also, State v. Wong (1994),95 Ohio App.3d 39, 51-52, reconsideration denied, 97 Ohio App.3d 244, dismissed, appeal not allowed, 70 Ohio St.3d 1455.
Here, in the videotaped interview with Columbus police that defendant entered into evidence, defendant claimed McNichol threatened him just prior to defendant shooting McNichol. The videotaped interview, however, provided only defendant's conclusory statement and few, if any, details concerning McNichol's alleged threats, much less that the threats were reasonably sufficient to bring on sudden passion or a sudden fit of rage under the objective standard of Shane. "Words alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations." Shane, supra, paragraph two of the syllabus.
Defendant alleges McNichol's history of past threats, including a past episode in which McNichol allegedly fired a gun toward defendant, would create fear in defendant. Even if we assume defendant was fearful of McNichol, no evidence from the time of the shooting supports an instruction that McNichol provoked defendant. See State v. Mack (1998),82 Ohio St.3d 198, 201 ("Fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage"). Moreover, the videotaped interview contains no evidence concerning provocation by McNichol.
As a result, defendant fails the first, objective prong of Shane's two-step analysis. Because defendant failed the objective portion of Shane's two-step test, as a matter of law, the trial court properly refused a voluntary manslaughter instruction. Similarly, the trial court properly refused to give an instruction concerning aggravated assault because defendant presented no evidence of provocation constituting sudden passion or a sudden fit of rage.
In support of his contention that the trial court should have given a jury instruction concerning attempted voluntary manslaughter and aggravated assault, defendant cites to this court's decision in State v. Roddy (Nov. 17, 1981), Franklin App. No. 81AP-499, unreported, in which this court noted "it is almost axiomatic that, in any case where there is evidence of self-defense, there will also be evidence that the defendant acted under extreme emotional stress which was brought on by a serious provocation created by the [victim]." Defendant's reliance on Roddy is misplaced. Here, unlike Roddy, the record does not contain evidence of self-defense. In fact, defendant himself concedes "it factually appears that the defendant acted too quickly to justify his actions on the grounds of self-defense." (Defendant's Brief, 7.) Therefore, defendant's reliance on Roddy is unpersuasive.
Moreover, defendant's reliance on State v. Wilkins (1980),64 Ohio St.2d 382 also is unpersuasive. In Wilkins, the Ohio Supreme Court noted "[t]he persuasiveness of the evidence regarding the lesser included offense is irrelevant. If under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense, the instruction on the lesser included offense must be given. The evidence must be considered in the light most favorable to defendant." Id. at 388. First, voluntary manslaughter and aggravated assault are offenses of an "inferior degree," not lesser included offenses. See Deem, supra, paragraph two of the syllabus. More importantly, however, even when it is construed in a light most favorable to defendant, the evidence does not permit the trier of fact to find defendant was provoked. As a matter of law, the trial court's instruction based on the offenses of voluntary manslaughter and aggravated assault was inappropriate on these facts.
Nor is defendant persuasive in contending he was denied effective assistance of counsel. To demonstrate ineffective assistance of counsel, "the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Strickland v. Washington (1984), 466 U.S. 668, 687.
As noted, because the record contains insufficient evidence of provocation to allow a reasonable jury to decide defendant reasonably was provoked by McNichol or Morrison, the trial court properly did not give a voluntary manslaughter or aggravated assault instruction. Because defendant was not prejudiced by his trial counsel's failure to request a jury instruction for voluntary manslaughter and aggravated assault, defendant has failed to demonstrate ineffective assistance of counsel. Accordingly, defendant's first assignment of error is overruled.
In his second assignment of error, defendant contends the trial court prejudiced his contentions of self-defense and provocation when it refused to allow cross-examination of Morrison, the state's witness, about alleged threats McNichol made against defendant. Defendant asserts such evidence was admissible under Evid.R. 404(A)(2) and 404(B) because evidence of McNichol's alleged violent propensities demonstrated (1) that McNichol had a motive to harm defendant, (2) that McNichol was violent and he acted in conformity with his past conduct, and (3) that evidence of McNichol's alleged violent propensities showed the state of mind of defendant with respect to defendant's claim of self-defense or provocation.
Evid.R. 404(A)(2) provides, in pertinent part, that "[e]vidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor is admissible." Under Evid.R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
In general, admission or exclusion of relevant evidence lies within the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. Unless the trial court clearly abused its discretion in the admission and exclusion of evidence and a defendant has been materially prejudiced thereby, we should be slow to interfere. See State v. Hymore (1967), 9 Ohio St.2d 122, 128, certiorari denied (1968), 390 U.S. 1024 ("The trial court has broad discretion in the admission and exclusion of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere"). See, also, State v. Lowe (1994), 69 Ohio St.3d 527, 532. An "`abuse of discretion' connotes more than an error in law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980), 62 Ohio St.2d 151, 157.
For purposes of addressing defendant's arguments we assume, without deciding, (1) McNichol had threatened defendant in the past, (2) under Evid.R. 404(A)(2), the alleged past threats are evidence of pertinent character trait, and (3) such evidence conformed to Evid.R. 405. Nonetheless, any past threats by McNichol are irrelevant, as past incidents or verbal threats do not satisfy the requisites of provocation when sufficient time elapses for cooling off. Mack, supra. Accordingly, although prior threats may have caused defendant to fear McNichol, that is insufficient to establish sudden passion of fit of rage to support provocation or self-defense. Id. at 201 ("Fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage"); see, also, State v. Robinson (1999),132 Ohio App.3d 830, 836 ("A claim of self-defense requires evidence that the defendant * * * had a bona fide belief that he was in imminent danger of death or great bodily harm"). (Emphasis added.) Moreover, "[t]he violent character of a victim is not relevant unless the accused shows he acted in self-defense" or provocation. State v. Stringfield (1992), 82 Ohio App.3d 705, 712, certiorari denied (1993),66 Ohio St.3d 1436 . As a result, the prior threats are insufficient to establish provocation or self-defense, and are irrelevant here in the absence of evidence supporting those issues. Because defendant did not show he acted in self-defense or provocation, the evidence of prior threats properly was excluded. See Evid.R. 402 ("[e]vidence which is not relevant is not admissible"). Accordingly, defendant's second assignment of error is overruled.
In his third assignment of error, defendant contends (1) the trial court erred because it failed to impose the shortest prison term when defendant had no prior prison sentence and the trial court failed to record findings that would have allowed imposition of a longer sentence, (2) the trial court erred by imposing the maximum sentence when it failed to state its reasons in support of a maximum sentence, and (3) the trial court erred by improperly imposing consecutive sentences. The state contends the trial court made the requisite findings to support imposition of maximum sentences. However, the state concedes the trial court failed to make the requisite findings or reasons to support imposition of consecutive sentences and it failed to set forth its imposition of more than the minimum prison term for an offender who had not previously served a prison term.
Preliminarily, we note defendant contends "the record indicates that the defendant had no prior criminal convictions and thus had never served a prior prison term." (Defendant's Brief, 19.) In fact, the trial court made no finding that defendant had ever served a prison term. Instead, at the sentencing hearing, defendant's counsel stated in his argument "[b]ut I do want the Court to know that as far as I know, Mr. Morrison has no prior record." (Tr. 267.) Because the record contains no evidence concerning defendant's prior record, we cannot conclude the trial court improperly imposed a sentence pursuant to R.C. 2929.14(B), which at the time defendant committed the crimes, provided: "[e]xcept as provided in division (C) * * * if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense * * * unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
Defendant also contends the trial court erred by imposing the maximum sentence. The Ohio Supreme Court in State v. Edmonson (1999),86 Ohio St.3d 324, acknowledged a public policy disfavoring maximum sentences except for the most deserving offender, stating that "the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense * * * only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders * * * and upon certain repeat violent offenders." Id. at 328, quoting R.C. 2929.14(C). (Emphasis sic.) "[T]he record must reflect that the trial court imposed the maximum sentence based on the offender satisfying one of the listed criteria in R.C. 2929.14(C)." Id. at 329. While R.C. 2929.14(C) itself does not require the trial court state its reasons for imposing the maximum sentence, R.C. 2929.19(B)(2)(d) does. State v. Moss (Dec. 28, 1999), Franklin App. No. 99AP-30, unreported. Thus, the trial court is not only required to make the requisite findings under R.C. 2929.14(C), but also to state its reasons, as required under R.C. 2929.19(B)(2)(d). State v. Legg (Mar. 7, 2000,) Franklin App. No. 99AP-574, unreported.
At the sentencing hearing, the trial court found "* * * the facts and circumstances of this case are clearly those that indicate the worst form of the offense, and in order to achieve, to incapacitate you as an offender and to deter others and rehabilitate yourself and to serve the purposes of the sentencing laws of this state, this Court's going to find that the maximum sentence is the only appropriate sentence with respect to this offense, these offenses. The felonious assaults will merge by law with the attempted murders, so there will only be sentencing with respect to the attempted murder counts." (Tr. 269.) Although the trial court found defendant committed "the worst form of the offense," the trial court did not state its reasons for finding that defendant committed the worst form of the offense. Because the trial court did not state its reasons, the trial court erred.
Defendant also contends the trial court erred by sentencing him to consecutive sentences. For its part, the state properly concedes the trial court did not make the requisite findings for the imposition of consecutive sentences. R.C. 2929.14(E)(4) and 2929.19(B)(2)(c) authorize a trial court to impose consecutive sentences under selected circumstances. Former R.C. 2929.14(E)(4), in effect at the time of defendant's crimes, stated:
 If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
Former R.C. 2929.19(B)(2), in effect at the time of the commission of the crimes, provided:
 The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
* * *
 (c) If it imposes consecutive sentences under section 2929.14 of the Revised Code, its reasons for imposing the consecutive sentences[.]
Not only must the trial court specify its findings from among those set forth in R.C. 2929.14(E)(4), but it must also specify one of the findings set forth in R.C. 2929.14(E)(4)(a), (b), or (c). Further, the court must specify its reasons in support of those findings pursuant to R.C.2929.19(B)(2)(c). Because the trial court failed to fully comply with the applicable sentencing provisions, we sustain defendant's third assignment of error.
Having overruled defendant's first and second assignments of error, but having sustained defendant's third assignment of error to the extent indicated, we affirm defendant's conviction, but reverse the sentence imposed and remand for resentencing.
Judgment affirmed in part and reversed in part; case remanded for resentencing.
PETREE and BROWN, JJ., concur.